UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA RUNDMAN, Personal Representative
of the ESTATE OF TYLER JAMES
HARTZELL,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY, et al.,

    Defendants.
_____/

Case No. 1:20-cv-860

Hon. Hala Y. Jarbou

## OPINION

    This a diversity action seeking recovery of insurance benefits under two separate insurance policies, one issued by Defendant Allstate Fire and Casualty Insurance Company ("Allstate Fire"), and one issued by Defendant Allstate Property and Casualty Insurance Company ("Allstate Property"). Plaintiff Lisa Rundman is the mother of Tyler James Hartzell. Tragically, Hartzell died in an automobile accident on April 23, 2019. She brings this claim on behalf of his estate. Both defendants filed a motion for summary judgment and Allstate Fire subsequently filed a motion to dismiss for failure to state a claim. The Court granted Defendants' motions in part, dismissing Allstate Fire. Before the Court is Plaintiff's motion for reconsideration (ECF No. 36). For the reasons herein, the Court will grant the motion for reconsideration. Upon reconsideration, the Court will deny Defendants' motions for dismissal and for summary judgment.

### I. BACKGROUND

    Plaintiff and her husband live in Constantine, Michigan. Hartzell grew up in their household and continued living with them intermittently as an adult. Allstate Fire issued Plaintiff and her husband an automobile insurance policy. They added Hartzell to the policy as a "listed

driver" when he turned 16 years old, and he remained listed as such until his death at the age of 20.

Plaintiff avers that Hartzell moved out of her home on three separate occasions for brief periods of time before returning home again.  (Rundman Aff., ECF No. 28, PageID.328.)  He moved back into her home a third time in October 2018.  A few months later, the family acquired a 1999 GMC Yukon for Hartzell to drive.  Plaintiff added this vehicle to the Allstate Fire policy on January 16, 2019.

On January 27, 2019, Hartzell moved to North Carolina, renting a cabin at a campground and obtaining local employment.  He took the Yukon and some of his belongings with him.  He left many of his belongings behind at Plaintiff's house and at his aunt's storage shed in Constantine, Michigan, including the following:  a bed, a table and chairs, end tables, lamps, appliances, tools, dressers, pots, pans, and dishes.  (*Id.*)  Also, Plaintiff and her husband continued to provide some support for Hartzell, buying groceries for him, paying utility bills and rent deposits, and making payments on his motorcycle.  (*Id.*)

In late February 2019, Hartzell allegedly told his landlord that he intended to move back to Michigan because he was homesick.  She allegedly agreed to let him out of his lease and later refunded some of his rent.

On March 18, 2019, Hartzell texted his mother, telling her

> I'm coming home . . . .  I just don't belong here[.]  It will be a w[h]ile before I come but I just wanna go home[.]  [I]mma save up enough to get a trailer or something started when I get home[.]"

(Text message, ECF No. 28, PageID.326.)

In late March, Hartzell's Yukon broke down, so he took over payments on his friend's Nissan Xterra.  On March 27, Plaintiff dropped the Yukon from her policy with Allstate Fire.

On March 29, 2019, Hartzell obtained a North Carolina driver's license. The following day, he obtained an insurance policy from Allstate Property in North Carolina to cover the Xterra.

Hartzell allegedly received a rent refund check on April 15, 2019, packed his belongings into the Xterra, and then drove to Plaintiff's home in Michigan. He stayed there for a week but then returned to North Carolina on April 22, 2019, allegedly to finish a workweek and pick up some paychecks.

Hartzell died in an automobile accident in North Carolina on April 23, 2019, while riding as a passenger in a vehicle driven by his friend. The vehicle driven by Hartzell's friend was insured by State Farm Insurance. Apparently, the driver of the other vehicle involved in the accident was insured by Geico Insurance Company. Geico and State Farm each tendered their respective policy limits of $30,000, a total of $60,000, to Hartzell's estate. (*See* Compl. ¶ 41, ECF No. 2-1.)

Plaintiff now seeks to recover on behalf of Hartzell's estate under the policies issued by Allstate Fire and Allstate Property to pay for Hartzell's medical and funeral expenses. Specifically, Plaintiff relies on coverage provided by the policies for personal injury (or medical payments) and for damages caused by underinsured motorists. For the most part, Defendants have denied or refused to pay the claims by Hartzell's estate. Count I of the complaint seeks a declaration as to the priority of coverage between the insurance policies. Count II seeks recovery of "no fault" benefits. (*See* Compl., ECF No. 2-1, PageID.37.) Count III seeks recovery of "underinsured motorist" benefits. (*Id.*, PageID.39.)

On September 22, 2020, the parties consented to dismissal of Plaintiff's claim against Allstate Property for underinsured motorist benefits. (*See* Consent Order, ECF No. 11.)

Both Defendants filed a joint motion for summary judgment (ECF No. 20), contending that Hartzell's estate has already received that to which it is entitled under the policies. Allstate Fire also filed a motion to dismiss the complaint for failure to state a claim (ECF No. 25).

## II. PRIOR OPINION

In its May 13, 2021, opinion, the Court concluded that

> there is no genuine dispute of material fact that (1) Allstate Property's policy ha[s] priority; (2) Allstate Property is liable for only $1,000 in benefits; and (3) Hartzell's estate is not entitled to benefits from Allstate Fire.

(5/13/2021 Op. 8, ECF No. 34.) Accordingly, the Court dismissed Allstate Fire. Plaintiff seeks reconsideration of that decision. In particular, Plaintiff contends that the Court erred when it determined that Allstate Property's policy has priority and that Plaintiff cannot recover from Allstate Fire.

## III. RECONSIDERATION STANDARD

Under Rule 54(b) of the Federal Rules of Civil Procedure, a non-final order is subject to reconsideration at any time before entry of a final judgment. *Id.*; *see also ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010). In addition, Western District of Michigan Local Civil Rule 7.4(a) provides that reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the court and the parties have been misled . . . [and] that a different disposition of the case must result from a correction thereof." *Id.*

## IV. ANALYSIS OF RECONSIDERATION MOTION

In its opinion, the Court relied upon Mich. Comp. Laws § 500.3114, which provides that when

> personal protection insurance benefits or personal injury benefits described in section 3103(2) are payable to or for the benefit of an injured person *under his or her own policy* and would also be payable under the policy of his or her spouse, relative, or relative's spouse, *the injured person's insurer shall pay all of the*

4

> *benefits* up to the coverage level applicable under section 3107c to the injured person's policy, *and is not entitled to recoupment from the other insurer*.

Mich. Comp. Laws § 500.3114(1) (emphasis added).  The Court determined that Hartzell was insured under his own policy issued by Allstate Property; consequently, under Mich. Comp. Laws § 500.3114, he was not entitled to benefits under the policy issued by Allstate Fire to Hartzell's mother.

Plaintiff argues, and Defendants apparently agree (*see* Allstate Fire's Br. in Opp'n to Reconsid. 6, ECF No. 40), that the priority provision in Mich. Comp. Laws § 500.3114(1) does not apply to this case because Hartzell's policy from Allstate Property was not a policy that provides "personal protection benefits or personal injury benefits described in section 3103(2)." *See id.*  The Michigan insurance statute requires "the owner or registrant of a motor vehicle required to be registered in [Michigan] [to] maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter[.]" Mich. Comp. Laws § 500.3101(1).  The statute also requires insurers of Michigan residents to provide no-fault personal protection and personal injury benefits.  *See* Mich. Comp. Laws § 500.3101(2) ("[A]ll automobile insurance policies offered in this state must include benefits under personal protection insurance, and property protection insurance as provided in this chapter, and residual liability insurance.").

Plaintiff argues that, because Allstate Property's policy was not issued in Michigan for a Michigan vehicle, it does not provide no-fault "personal protection benefits or personal injury benefits" as described by Mich. Comp. Laws § 500.3114(1).  Plaintiff's argument is supported by the Michigan Supreme Court's decision in *Turner by Sakowski v. Farmers Insurance Exchange*, 953 N.W.2d 204 (Mich. 2021).  There, the court held that a different provision in Mich. Comp. Laws § 500.3114 did not apply to an out-of-state insurer because that insurer had not agreed to

5

provide no-fault insurance benefits under Mich. Comp. Laws § 500.3101. *Turner*, 953 N.W.2d at 206. Similarly, Allstate Property, the North Carolina insurer of Hartzell's Xterra, did not agree to provide "personal protection benefits" to Hartzell as described in Michigan's automobile insurance statute. Consequently, the priority provision in the statute does not apply to Allstate Property's policy and does not limit Plaintiff to recovery from that policy alone.

In short, the Court agrees with Plaintiff that Mich. Comp. Laws § 500.3114(1) does not resolve whether Plaintiff is entitled to benefits from Allstate Fire. Consequently, the Court will grant Plaintiff's motion for reconsideration and vacate the Court's opinion and order resolving Defendants' motions for dismissal and for summary judgment.

In those motions, Defendants raised other arguments in support of dismissal of Allstate Fire that the Court did not address in its opinion. Because the priority provision does not resolve the claim against Allstate Fire, the Court will now address those other arguments. The Court will also restate its reasons for denying Allstate Property's request for summary judgment.

## V. STANDARDS FOR DISMISSAL / SUMMARY JUDGMENT

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). Here, Allstate Fire's motion relies on the pleadings and records already part of the case due to Defendants' motion for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### VI. ANALYSIS

#### A. Allstate Property

As the Court explained in its prior opinion, Allstate Property seeks summary judgment. Allstate Property's policy provided up to $1,000 in coverage for "expenses incurred for necessary medical and funeral services because of bodily injury[.]" (Allstate Property Policy, ECF No. 20-

7

2, PageID.173.) Allstate Property contends that it tendered a check to Hartzell's estate for $1,000. (*See* Check, ECF No. 20-6.) Plaintiff asserts that she did not receive this check (*see* Pl.'s Answer to Allstate Fire's Mot. to Dismiss 9, ECF No. 29). Allstate Property has not provided evidence that it sent the check to Hartzell's estate; it has merely provided a copy of the original check. Viewed in a light most favorable to Plaintiff, this evidence does not suffice to show that Allstate Property paid $1,000 to Hartzell's estate. Thus, it is not clear whether Allstate Property has fulfilled this coverage obligation under its policy.

Allstate Property's policy also provided up to $50,000 in coverage for "compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of . . . [b]odily injury sustained by an insured and caused by an accident[.]" (Allstate Property Policy, PageID.177.) This amount is reduced by "all sums . . . [p]aid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible[.]" (*Id.*, PageID.179.) It is not disputed that Hartzell's estate received payment of more than $50,000 from State Farm and Geico. Accordingly, after accounting for those payments, Allstate Property is not liable for further payment of compensatory damages to Plaintiff. It is only liable for the $1,000 discussed in the previous paragraph. Because a question of fact remains as to whether Allstate Property has paid or properly tendered this amount to Hartzell's estate, the Court will not grant summary judgment to Allstate Property.

### B. Allstate Fire

Allstate Fire seeks summary judgment and dismissal for failure to state a claim.

Allstate Fire's policy provided coverage for medical and funeral expenses resulting from bodily injury to an injured person, also known as "personal protection insurance benefits" in Michigan and identified as such in the policy. (*See* Allstate Fire Policy, ECF No. 20-3, PageID.208.) Under Michigan law, these benefits extend to "the person named in the policy, the

8

person's spouse, and *a relative of either domiciled in the same household*[.]" Mich. Comp. Laws § 500.3114(1) (emphasis added); *see also* Mich. Comp. Laws § 500.3111 (extending personal protection insurance benefits to relatives "domiciled in the same household" as a named insured, when the accident occurs outside of Michigan). In addition, Allstate Fire's policy expressly defines an "insured person" entitled to benefits as "any resident relative" of a named insured. (ECF No. 22-1, PageID.268.) Plaintiff argues that Hartzell's estate is entitled to recover under Allstate Fire's policy because Hartzell was a relative of Plaintiff domiciled in her household at the time of the accident.

Allstate Fire raises two objections to coverage in its motion to dismiss and motion for summary judgment. First, it contends that Hartzell does not qualify as a relative who was domiciled in the same household as Plaintiff because he was living in North Carolina at the time of the accident. Second, it contends that an "anti-stacking" provision in its policy precludes Hartzell's estate from recovering benefits.

### 1. Anti-Stacking

Allstate Fire relies on the following provision in its insurance policy as a basis for denying coverage to Hartzell's estate:

> **Combining Limits of Two Or More Automobiles Is Prohibited**
> This provision applies only when the named insured has two or more autos insured in his name. If one of the autos is involved in an accident, the coverage limit will be shown on the Policy Declarations for that auto. If none of the autos is involved in the accident, the coverage limit for any single auto shown on the Policy Declarations may be selected.
>
> In either case, coverage on any other auto may not be added to or stacked upon the coverage of the involved or selected auto.

(Allstate Fire Policy, ECF No. 20-3, PageID.211-212.)

This provision does not apply. None of the automobiles listed on the policy issued to Plaintiff was involved in the accident. Thus, by its terms, the foregoing provision does not bar

9

coverage; instead, it permits an insured to select "the coverage limit for any single auto shown on the Policy Declarations." (*Id.*) Plaintiff contends, and the policy suggests, that the underinsured motorist limit for the vehicles in Allstate Fire's policy is $250,000. (*See id.*, PageID.204.)[1]

Defendants ostensibly rely on the last sentence, which states that "coverage on any other auto may not be added to or stacked upon the coverage of the involved or selected auto." In context, the phrase "coverage on any other auto" appears to refer to coverage of another automobile for the "named insured," rather than coverage of another automobile under a different insurance policy issued to another individual. Otherwise, it would make no sense for the provision to apply "only when the named insured has two or more autos insured in his name." (*See id.*, PageID.211.)

That interpretation is supported by the next section of Allstate Fire's policy, which applies when more than one insurance policy covers the incident. It reads:

> **If There Is Other Insurance**
> If the insured person was in, on, getting into or out of a vehicle you do not own, which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will pay only the amount by which the limit of liability of this policy exceeds the limit of liability of that policy.
>
> If more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable under the policy with the highest limit for underinsured motorists coverage. We will bear our proportionate share of the damages payable with other underinsured motorists' benefits. This applies no matter how many autos or auto policies may be involved, whether written by us or another company.

(Allstate Fire Policy, PageID.212 (emphasis omitted).) Notably, this provision states that the total benefits cannot exceed "the maximum benefits payable under the policy with the *highest limit* for underinsured motorists coverage[.]" *Id.* (emphasis added). It does not limit such benefits to those

---

[1] The copy of the policy that Allstate Fire filed with the Court is missing pages and text. For instance, the policy declaration states that the limit for personal protection benefits is listed on an attached supplement, but the supplement is not attached. (*See* ECF No. 20-3, PageID.204.) It also states that the limit for underinsured motorists coverage is "    ,000" for each person, apparently missing some numbers. (*Id.*)

10

available under another policy. Thus, it does not necessarily limit Plaintiff to recovery of the maximum amount available under Hartzell's policy with Allstate Property.

In any case, Allstate Fire's anti-stacking concerns are misplaced. Plaintiff does not seek to recover the limit of liability from other insurers and then stack that limit onto the maximum limit available from Allstate Fire. To the contrary, Plaintiff acknowledges that Allstate Fire's policy limit is offset by amounts "paid by or on behalf of the owner or operator of the underinsured auto or anyone else responsible," as well as amounts "paid or payable, if for the same elements of loss under . . . any similar automobile medical payments coverage." (*Id.*, PageID.211.) In short, the provision cited by Allstate Fire does not preclude Plaintiff from obtaining benefits under Allstate Fire's policy.[2]

### 2. Domicile

Allstate Fire argues that Hartzell was not a resident "domiciled" with his mother at the time of the accident and thus does not qualify for coverage under its policy. A person's domicile is "'that place where a person has voluntarily fixed his abode . . . not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.'" *Henry v. Henry*, 106 N.W.2d 570, 577-78 (Mich. 1960) (quoting *Williams v. North Carolina*, 325 U.S. 226, 236 (1945)).

When determining whether an individual is a resident domiciled in the same household as the insured, Michigan courts consider the following factors:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where

---

[2] Defendants cite *Becker v. Allstate Ins. Co.*, No. 89-3234, 1990 WL 815 (6th Cir. Jan. 8, 1990), in which the Court of Appeals affirmed a district court's decision to apply an anti-stacking provision of an automobile insurance policy. *Id.* at *1. The language of that provision is not present in the opinion, however, so the Court cannot compare it to the provision in Allstate Fire's policy.

11

> the person lives is in the same house, within the same curtilage or upon the same premises; [and] (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household.

*Workman v. Detroit Auto. Inter-Ins. Exch.*, 274 N.W.2d 373, 379-80 (Mich. 1979) (citations and footnote omitted). No single factor is determinative. *Id.* at 380 n.6.

After *Workman*, the Michigan Court of Appeals identified other factors a court can consider in the case of "young people departing from the parents' home and establishing new domiciles as part of the normal transition to adulthood and independence." *Dairyland Ins. Co. v. Auto Owners Ins. Co.*, 333 N.W.2d 322, 325 (Mich. Ct. App. 1983). Those factors are:

> whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support.

*Id.* "The *Workman-Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled." *Grange Ins. Co. of Mich. v. Lawrence*, 835 N.W.2d 363, 374 n.41 (Mich. 2013).

A person can have only one domicile at a time. *Id.* at 372-73. Consequently, the Court "must consider the competing potential domiciles and, based on well-established factors, must determine which is the claimant's one and only domicile." *Bd. of Hosp. Managers for City of Flint v. Farm Bureau Gen'l Ins. Co. of Mich.*, No. 348364, 2020 WL 6937074, at *2 (Mich. Ct. App. Nov. 24, 2020). "Typically, . . . an adult acquires a new domicile by choosing one of his or her choice, which makes the question of intent a preeminent concern in determining an adult's domicile." *Grange Ins. Co.*, 835 N.W.2d at 377.

"A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the [trial] court." *Id.* at 370 (footnote omitted).

Allstate Fire argues that Hartzell's domicile was in North Carolina at the time of the accident. However, Plaintiff argues that, although Hartzell had moved to North Carolina, he moved back into her home and had reestablished his domicile in Michigan at the time of the accident. Some factors favor Plaintiff's position while other factors favor Allstate Fire's position.

### (a) Subjective intent

Hartzell's intent to move back home is evidenced in his words and his actions. He told his mother that he wanted to return home and later brought his belongings to her house and stayed for a week there. Defendants note that he stated in his text that it would be a while before he returned and that he wanted to save up some money first, but he sent that text about a month before he actually travelled to his mother's house. It is plausible that he had achieved his objective by the time he returned.

Defendants also note that Hartzell subsequently returned to North Carolina to continue working, which suggests that he did not intend to leave North Carolina. On the other hand, it is not unusual for a person changing their residence to make a return trip to tie up loose ends. In addition, Hartzell's living arrangement in North Carolina (staying with a friend rather than in his previous lodgings) suggests a temporary purpose for staying in North Carolina rather than an intent to remain indefinitely. Moreover, Hartzell had been present in North Carolina for only a day when he died. This factor weighs in Plaintiff's favor.

### (b) Formality of the relationship with members of the household

According to Hartzell's mother, Hartzell moved out of the home for several months on three different occasions and then returned, leaving much of his property at her home, including

13

in his bedroom at her house. (Rundman Aff., PageID.328.) These circumstances suggest an informal relationship where Hartzell could return when he pleased, which weighs in favor of Plaintiff. *See Bd. of Hosp. Managers*, 2020 WL 6937074, at *3 (noting that an informal relationship between the claimant and the insured family member favors a finding of domicile).

### (c) Place where the person lives

When in Michigan, Hartzell apparently stayed inside his mother's home, not in another building or another premises. This factor weighs in favor of Plaintiff.

### (d) Existence of another place of lodging

Hartzell was staying with a friend in North Carolina around the time that he died. This factor weighs in favor of Allstate Fire.

### (e) Use of parents' home as mailing address

There is no evidence that Hartzell used his parents' home as his mailing address. Indeed, Plaintiff asserts that Allstate Property sent a reimbursement check to Hartzell at his address in North Carolina. This factor weighs in favor of Allstate Fire.

### (f) Maintaining possessions at parents' house

Plaintiff avers that Hartzell kept "substantially all his household goods" at her home and at his aunt's storage shed in the same town. (Rundman Aff., PageID.328.) This factor weighs in favor of Plaintiff.

### (g) Use of parents' address on driver's license or other documents

There is no evidence that Hartzell used Plaintiff's address on his driver's license or other documents. In fact, only a few weeks before his death, he obtained a North Carolina driver's license which presumably had a North Carolina address. This factor weighs in favor of Allstate Fire.

### (h) Room maintained for the claimant at the parents' home

Plaintiff avers that Hartzell left much of his property in his bedroom at her home, which indicates that she maintained a room for Hartzell at her home. This factor weighs in favor of Plaintiff.

### (i) Dependent upon parents for support

Plaintiff avers that she and her husband continued giving Hartzell money after he left home, paying for groceries, utility bills, motorcycle payments, "back rent," and "damage deposits." (Rundman Aff., PageID.271.) This factor weighs in favor of Plaintiff.

### (j) Summary of factors

In summary, the factors do not clearly weigh in favor of Defendants. Moreover, some facts that may be material are unclear, including: the content of the statements Plaintiff avers that Hartzell made to her about his plan to move home, other than the text message; the nature of the belongings that Hartzell brought with him when he returned to Plaintiff's house in April 2019; the extent of the financial support that Plaintiff and her husband provided for Hartzell; the reasons for Hartzell's return to North Carolina shortly before his death; and the status of his rented lodgings in North Carolina. Nevertheless, what is clear is that, viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could find that Hartzell had established his domicile in Michigan before he died.

When making this determination, the Court does not consider evidence that appears to be inadmissible because it is hearsay or lacks foundation, including the purported rental refund check issued to Hartzell (ECF No. 22-1, PageID.273) and Plaintiff's averments that Hartzell canceled his cabin rental agreement and returned to North Carolina in order "to finish a workweek and pick up a couple of paychecks" (Rundman Aff., PageID.329). Nor does the Court consider Plaintiff's "supplemental" affidavits (ECF No. 39), which she filed after briefing on the motions for summary

judgment and dismissal had completed and only a day before Allstate Fire was due to respond to the motion for reconsideration. Defendants complain that these affidavits are untimely. In addition, the Court does not consider Plaintiff's unsupported allegations that Hartzell obtained a North Carolina driver's license for the sole purpose of obtaining insurance and buying the Xterra, or that Plaintiff spoke with others about his intent to move back to Michigan. Even without the foregoing, there is enough from which a jury could reasonably infer that Hartzell intended and established his domicile in Michigan and then returned to North Carolina only temporarily.

Defendants further argue that Hartzell was not "physically residing" in Plaintiff's home at the time of the accident, but that argument ignores his intent and all the other circumstances that are part of the framework provided by Michigan courts for determining domicile. If Hartzell's domicile was in Michigan, then Michigan law makes him eligible for benefits under his mother's insurance policy.

Accordingly, for all the foregoing reasons, Defendants are not entitled to summary judgment or dismissal of the complaint. *Cf. Detroit Med. Ctr. v. Farm Bureau Gen. Ins. Co.*, No. 287775, 2010 WL 1255796, at *8 (Mich. Ct. App. Apr. 1, 2010) (denying summary judgment where some *Workman/Dairyland* factors favored the plaintiff, some favored the defendant, and some "material facts presented by the parties require clarification"); *accord Johnson-Jefferson v. Home-Owners Ins. Co.*, No. 348495, 2020 WL 6236469, at *5 (Mich. Ct. App. Oct. 22, 2020) (denying summary judgment where "reasonable minds could differ" on the location of the plaintiff's domicile).

## VII. CONCLUSION

In summary, the Court will grant Plaintiff's motion for reconsideration and vacate its prior opinion and order resolving Defendants' motions for dismissal and for summary judgment. Upon reconsideration of those motions, the Court finds that there is no genuine dispute that Allstate

Property is liable for only $1,000 in benefits.  There is, however, a genuine dispute about whether Allstate Property has paid those benefits.  In addition, as to Allstate Fire, the anti-stacking provision in its policy does not preclude Plaintiff from seeking benefits.  Moreover, there is a genuine dispute about facts that bear on whether Hartzell was domiciled in Michigan before the accident, which means there is a dispute of material fact about whether Hartzell's estate is eligible for benefits.  Accordingly, the Court will deny Defendants' motions for dismissal and for summary judgment.

An order will enter in accordance with this Opinion.

Dated:  July 12, 2021                                  /s/ Hala Y. Jarbou
                                                       HALA Y. JARBOU
                                                       UNITED STATES DISTRICT JUDGE